IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-00135-SKC-STV

TRENT REYNOLDS,

    Plaintiff,

v.

WES HAMILTON, *et al.*,

    Defendants.

---

**ORDER RE: PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT (DKT. 47)**

---

    This dispute arises from business relationships gone awry. Plaintiff Trent Reynolds, both individually and as trustee of Reynolds Capital, a Colorado trust, alleges Defendants Wes Hamilton and Biofuel Mining, Inc. (Biofuel) failed to live up to their end of a series of business deals allegedly with Covala Capital, LLC, a Colorado limited liability company. Covala assigned its interest in any claims against Defendants to Plaintiff.

    After the Clerk of Court entered defaults against each Defendant (Dkts. 44, 46), Plaintiff filed the instant Motion for Entry of Default Judgment (Motion). Dkt. 47. As explained below, the Court denies the Motion.

1

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55(b), default judgment may enter against a party who fails to appear or otherwise defend a case brought against them. However, a party is not entitled to the entry of default judgment as a matter of right. *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-02445-LTB-MJW, 2008 WL 793606, at * 2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn. Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)). Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." *McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id*. The decision whether to enter judgment by default is committed to the sound discretion of the district court. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003).

## BACKGROUND

Plaintiff filed his Amended Complaint (AC) against Defendants on March 13, 2024. Dkt. 13. Despite being served, neither Defendant answered or otherwise responded to the AC, or entered an appearance in this case. Dkt. 44 (entry of default against Hamilton); Dkt. 46 (entry of default against Biofuel).

The AC alleges "[t]his case rises from a series of transactions the parties undertook in connection with Covala Capital, LLC ('Covala'), a limited liability

2

company formed under the laws of Colorado whose sole member was Ronald Southard, a resident of Colorado." Dkt. 13, ¶7. "Among other things, Covala contemplated investment opportunities with Biofuel Mining, Inc., under which Covala would borrow funds from investors and use the proceeds of those loans to purchase 49 percent of Biofuel's stock." *Id.* at ¶9.

"Hamilton is Biofuel's principal shareholder, if not sole shareholder," and a resident of Kentucky. *Id.* at ¶¶3, 4. Biofuel "is a Kentucky corporation with its primary place of business in Debord, Kentucky."

"On February 21 or 22, 2022, a promissory note was executed by Hamilton and on behalf of Covala under which Covala was to provide a short-term loan of $100,000 to Hamilton, the principal shareholder of Biofuel, in his personal capacity. On information and belief, Hamilton then transferred this $100,000 to Biofuel." *Id.* at ¶10. "This note also acknowledged an anticipated but yet-to-be-fully-outlined partnership whereby Covala would make additional investments into Biofuel, purchasing shares of Biofuel from Hamilton. These investments, outlined in a 'Payments/Investments' Schedule attached to the note, identified two subsequent $100,000 loans to be made March and April 2022 (in addition to the February 2022 note) and additional payments to be made as part of a 'Partnership investment schedule' over that same time frame." *Id.* at ¶12. "Covala caused additional payments in an amount totaling $322,000 to be wired directly to Biofuel's bank account." *Id.* at ¶13.

Further, "[i]n early 2022, Covala purchased bitcoin mining machines for Biofuel, at a purchase price of $49,999." *Id.* at ¶15. "Covala paid the $49,999 to Biofuel, and on information and belief, those bitcoin machines were delivered directly to Biofuel or Hamilton." *Id.* at ¶16. "The total sum Covala caused to be paid to Hamilton and/or Biofuel was $471,999." *Id.* at ¶17.

In January 2023, Covala "transferred its claims and rights to collect debts (including those owed by Hamilton and/or Biofuel) . . . ," and "its rights relating to the bitcoin mining machines to Reynolds Capital." *Id.* at ¶¶20, 21. "In May 2023, Reynolds contacted Biofuel and Hamilton to inform them that payments made by or on behalf of Covala were to be remitted to Reynolds Capital." *Id.* at ¶23. "Neither Biofuel nor Hamilton have made any payment to Covala or to Reynolds Capital to repay, refund, or return proceeds sent to Biofuel." *Id.* at ¶25.

## ANALYSIS

Plaintiff seeks default judgment against Defendants on all four of his claims. First, he alleges breach of contract against Hamilton seeking $100,000 plus interest, and reasonable fees and costs to collect on the allegedly defaulted promissory note. *Id.* at ¶¶26-30. Second, Plaintiff alleges unjust enrichment of Biofuel and requests $422,000 (which includes the $100,000 already sought in his first claim), plus applicable interest. *Id.* at ¶¶31-34. Third, he alleges breach of contract against Biofuel for the $49,999 paid by Covala for the bitcoin mining machines, or

4

alternatively and fourth, unjust enrichment by Biofuel for the same transaction. *Id.* at ¶¶35-43.

In determining whether the entry of default judgment is warranted, the Court must first determine whether it has jurisdiction over the subject matter and the defendant. *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). It is well-settled that "[a] judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties." *Williams*, 802 F.2d at 1202.

Here, the allegations in the AC (Dkt. 13)—taken as true for purposes of default judgment—establish the Court's subject matter jurisdiction over this case under 28 U.S.C. § 1332 because complete diversity exists between Defendants Hamilton and Biofuel who are each citizens of Kentucky, and Plaintiff is not.[1] Dkt. 13, ¶¶2, 3. Further, the amount in controversy exceeds $75,000. *Id.* at ¶17.

Plaintiff, however, also bears the burden of establishing this Court's personal jurisdiction over Defendants. *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1242 (D. Colo. 2015). The Court finds it does not have personal jurisdiction over either Defendant based on the factual allegations in the AC.

The Tenth Circuit has established a two-part test for personal jurisdiction: "First, we ask whether any applicable statute authorizes service of process on

---

[1] The case caption suggests that the plaintiff Reynolds appears both as "an individual and trustee in trust of Reynolds Capital, a Colorado Trust." Dkt. 13, p.1. Plaintiff is a citizen of Texas, where he resides. The trust is a Colorado trust.

5

defendants. Second, we examine whether the exercise of statutory jurisdiction comports with constitutional due process demands." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

The Colorado long-arm statute codifies the "minimum contacts" test of *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). It confers the maximum jurisdiction permissible consistent with the Due Process Clause of the 14th Amendment. *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1193 (Colo. 2005). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985) (cleaned up). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980) (cleaned up). The "minimum contacts" test asks whether the defendant has purposefully directed its activities at residents of the forum state, whether the claims asserted arise out of that purposeful direction of activity, and whether the assertion of jurisdiction under the circumstances is reasonable and fair. *Burger King*, 471 U.S. at 474.

Plaintiff contends "Defendants' contacts with the State of Colorado rise from a business relationship it formed with Covala . . . ." Dkt. 47, p.4. "In order to assess whether minimum contacts occurred in a contract case, we look at prior negotiations

6

and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008). A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum. *Burger King*, 471 U.S. at 473; *Ruggieri v. General Well Service, Inc.*, 535 F. Supp. 525, 535 (D. Colo. 1982) ("Jurisdiction is not proper in Colorado merely because one of the parties to the contract [is] a Colorado resident.").

The AC, however, contains no further information regarding the negotiations, communications or correspondence between the parties, their course of dealing, the nature of the business relationship, or other similar information that could establish Defendants' purposeful availment of the privilege of conducting business in the forum state. *See AST Sports Sci.*, 514 F.3d at 1059 ("Phone calls, letters, facsimiles, and emails provide additional evidence that [the foreign defendant] pursued a continuing business relationship with [the plaintiff].").

Rather, the contacts alleged in the AC are tentative and focus on Covala's conduct, rather than Defendants'. For example, the AC alleges "Covala contemplated investment opportunities with Biofuel . . . ." Dkt. 13, ¶9. The promissory note between Covala and Hamilton "also acknowledged an anticipated but yet-to-be-fully-outlined partnership whereby Covala would make additional investments into Biofuel, purchasing shares of Biofuel from Hamilton." *Id.* at ¶12. "In early 2022, Covala purchased bitcoin mining machines for Biofuel, at a purchase price of $49,999.

7

Covala paid the $49,999 to Biofuel . . . ." *Id.* at ¶¶15-16. In short, the AC talks about what Covala did, not what Defendants did or how Defendants purposefully availed themselves of doing business in Colorado.

The affidavit and exhibits submitted with the Motion only further erode certainty about whether either Defendant is subject to personal jurisdiction in Colorado. The February note executed by Hamilton for the benefit of Covala specifically states it is subject to California law, not Colorado. Dkt. 47-3, p.3. The letter of intent between Covala and Biofuel is dated March 1, 2022, but it is from Covala addressed to Biofuel. Dkt. 47-2, p.1. Further, the letter of intent anticipates that the parties will negotiate and execute follow-on definitive agreements, that it is to be construed according to Kentucky law, and the anticipated business purchase is not binding under the terms of the letter. *Id.* at pp.1, 3, 4.

There is an invoice for $49,999.95 directed to Covala indicating it is from "Biofuel Mining" and "weshamilton@digicamsecurity.com." Dkt. 47-4, p.15. But a stray invoice alone without more to explain the business relationship or its association to the forum state is inadequate. Plaintiff's affidavit attempts to give that context, but inadequately so. The affidavit explains the "letter of intent . . . discuss[ed] the principal terms of a proposal being considered by Covala to invest in and acquire shares of Biofuel," and "[t]he funds to be sent to Biofuel in connection with this proposal were intended to be put toward the construction of zero-carbon clean energy facilities in Buena Vista, Colorado . . . in order to power bitcoin mining."

8

Dkt. 47-1, ¶¶7-8. But as already explained, the letter of intent anticipated future, definitive agreements to be executed. And the claim that the parties may have *intended* to construct clean energy facilities in Colorado does not evidence Defendants' actions taken or directed at the forum state. And even if the Court were to accept that the parties intended to construct clean energy facilities in Colorado (which is the first time this has been raised to the Court), the construction of those facilities is disjointed from whether the alleged bitcoin mining itself was to occur in Colorado, which the AC does not allege.

It is well-settled that "[a] judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties." *Williams*, 802 F.2d at 1202. Minimum contacts, in the context of specific jurisdiction, must arise out of contacts that the "defendant himself" creates with the forum state. *Burger King*, 471 U.S. at 475. It is insufficient for the plaintiff to be the only link between the defendant and the forum State to establish jurisdiction. *See id.* at 478. Here, the Court is not persuaded Plaintiff has established personal jurisdiction over Defendants because the facts, as currently pleaded in the AC and presented on the Motion, are too attenuated to establish sufficient minimum contacts between Defendants and the state of Colorado based on their alleged transaction of business in Colorado.

Because the Court finds it does not have personal jurisdiction over either Defendant, as currently alleged, the Court does not consider whether venue is

9

appropriate. *See* 28 U.S.C. § 1391(b). Nor does it consider whether the factual allegations of the AC support each of Plaintiff's claims against Defendants.

*   *   *

For the reasons shared above, the Motion for Entry of Default Judgment (Dkt. 47) is DENIED.

Plaintiff is FURTHER ORDERED TO SHOW CAUSE, in writing on or before July 16, 2025, why the Court should not dismiss this case for lack of personal jurisdiction over the Defendants or, alternatively, why the Court should not order this case transferred to a federal district court that has personal jurisdiction over them.

DATED: June 25, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge